United States District Court
Southern District of Texas

**ENTERED**

July 24, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| MOBILE ENVIRONMENTAL SOLUTIONS, LLC, | § § § | |
| *Plaintiff,* | § § | |
| VS. | § § | CIVIL ACTION NO. 4:24-CV-04929 |
| ALL-STAR INFLATABLES INCORPORATED AND REVILO INDUSTRIES, INC., | § § § § | |
| *Defendants.* | | |

## ORDER

Pending before this Court is Defendants All-Star Inflatables Incorporated d/b/a Best American Booths and Revilo Industries, Inc.'s (collectively, "All-Star") Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 23). Plaintiff Mobile Environmental Solutions, LLC ("MES") filed a response in opposition, (Doc. No. 26), and All-Star filed a reply brief (Doc. No. 28). Upon careful consideration of the pleadings and relevant legal standards, the Court hereby **DENIES** Defendant All-Star's Rule 12(b)(6) Motion to Dismiss (Doc. No. 23).

### I.      Factual Background

This is a dispute over the use of a mobile inflatable paint booth design. The following allegations are drawn from the First Amended Complaint (Doc. No. 19). For over a decade, MES "has been in the business of developing, marketing, and distributing mobile inflatable paint booths, bedliner booths, clean rooms, and hail damage estimating tunnels." (*Id.* at 3). These mobile booths are primarily used for "on-site spray-on bedliner services" and for "automobile painting and restoration, windshield replacement, windshield chip repair, interior repair, inventory photographs,

and window tinting." (*Id.*). While MES mobile booths come in different shapes and sizes for different uses, MES provided these photos as examples of its mobile booths:

 

(*Id.* at 16).

MES alleges that these inflatable booths are "not simple [] inflatable enclosures," and that it "spent years researching, developing and refining its inflatable portable booth design and specifications, including addressing airflow and ventilation issues." (*Id.* at 6). MES also alleges that it "expended considerable resources designing and developing its products [in order] to comply with all applicable government and industry regulations, including stringent OSHA, EPA, and NFPA standards and regulations" to "eliminat[e] or reduc[e] toxic fumes from the working environment." (*Id.*). Additionally, MES alleges that it "was able to design and provide a portable eco-friendly booth that removes contaminant and preserve the environment, enabling compliance with applicable safety and environmental regulations." (*Id.*).

In 2013, MES connected with Paul Oliver, the owner of All-Star, at an inflatables trade show in Austin, Texas. (*Id.* at 4). At the time, All-Star "manufactured and sold inflatable arches for athletic and sporting events," and after a series of discussions, MES decided to "switch manufacturers and enter into a manufacturing agreement" with All-Star. (*Id.*). MES and All-Star agreed that "All-Star would manufacture inflatable booths for use in the automotive field solely for [MES], and [MES] would purchase inflatable booths for use in the automotive field solely from

All-Start for the term of the Agreement." (*Id.* at 5); *see also* (Doc. No. 19-1) (Purchase Agreement). The Agreement also provided that All-State would have a "non-exclusive, non-royalty bearing license" to use MES's confidential information and intellectual property, including information like "cost expenditures, revenue, profits, customer contacts, type and quality of products ordered, customer specification and requests, potential customers, future business relationships, business plans and marketing strategies," to manufacture the MES booths. (Doc. No. 19 at 5–6).

According to MES, sales for the inflatable booths "took off in 2017," and its "customer base expanded to include body shops purchasing [the booths] for overflow issues and custom car shops for high-end painting and finishing projects." (*Id.* at 7). After the COVID-19 pandemic, MES began retailing the booths to other field, and the Parties amended to Purchasing Agreement "to expand the scope of exclusivity to include the 'Automotive Field,' as well as the 'fields of [A]erospace, Construction, Photography, [and] Medical.'" (*Id.* at 8). The Amendment also removed the requirement that MES "would only purchase [booths] from All-Star," allowing MES to utilize in-house manufacturing or another manufacturer to keep up with the demand. (*Id.*).

After significant problems with All-Star's manufacturing services, which resulted in multiple problems, including the alleged loss of a major contract with a military distributor, MES terminated the Agreement in late 2022. (*Id.*). Shortly thereafter, All-Star allegedly established a competing company called "Best American Booths" that began "manufacturing, marketing, distributing, and selling portable inflatable booths, including mobile inflatable booths." (*Id.* at 9). Best American Booths represents that it is the "leading provider of state-of-the-art inflatable portable paint booth solutions" and claims that it has "established itself as a trusted name in the mobile automotive and industrial finishing industry." (*Id.*).

3

In February 2024, All-Star exhibited the inflatable booths at the Mobile Tech Exposition, the largest international trade show and conference for mobile automobile technicians in the world. (*Id.*). MES was also presented and exhibited its products at that show. All-Star and MES were apparently right across the aisle from one another at the trade show, allegedly causing confusion for potential customers because the "products were virtually identical." (*Id.* at 9–11). At the Exposition, All-Star distributed a marketing brochure for Best American Booths that apparently included photographs of *MES's* inflatable booths. (*Id.* at 11–12). MES later discovered that Best American Booths was also circulating the photos of MES's products on its website, social media profiles, and through emails to potential clients. (*Id.* at 11–16). MES provided the following photographs to show the comparison between the alleged products:

**PLAINTFF MES'S PRODUCTS**          **DEFENDANTS' PRODUCTS**







(*Id.* at 20).

On December 16, 2024, MES filed this lawsuit against All-Star for breach of contract, promissory estoppel, unfair competition and false designation of origin, false advertising, federal trade dress infringement, common law trade dress infringement, trade dress dilution, common law unfair competition, misappropriation of trade secrets under the Texas Uniform Trade Secrets Act, misappropriation of trade secrets under the Defend Trade Secrets Act, common law misappropriation, unjust enrichment, defamation, and business disparagement. *See generally* (*id.*). All-Star requests this Court to dismiss the (1) unfair competition and false designation of origin, (2) federal trade dress infringement, (3) common law trade dress infringement, and (4) trade dress dilution claims for the failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 23). The Court addresses the disputed claims below.

## II.    Legal Standards

This Court applies the well-accepted standard in evaluating a Rule 12(b)(6) motion. A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept

factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79.

## III.    Analysis

All-Star argues that MES has failed to state a claim for (1) unfair competition and false designation of origin, (2) federal trade dress infringement, (3) common law trade dress infringement, and (4) trade dress dilution under Federal Rule of Civil Procedure 12(b)(6). The Court addresses the sufficiency of the factual allegations for each of the claims below and denies the Motion to Dismiss.

## A.  Unfair Competition and False Designation of Origin

MES alleges that All-Star violated the Lanham Act, 15 U.S.C. §§ 1501 *et seq.*, by making certain false and misleading representations on their website, social media pages, and marketing materials and failing to correct those misrepresentations. All-Star argues that MES has failed to allege sufficient facts to establish likelihood of confusion. To prevail on this Lanham Act claim, MES must plead sufficient facts to establish that (1) it possesses a legally protectable trademark and (2) All-Star's use of this trademark "creates a likelihood of confusion as to source, affiliation, or sponsorship." *Streamline Production Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017). To assess likelihood of confusion, courts look to: (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarly of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) any evidence of actual confusion, and (8) the degree of care exercised by potential purchasers. *Id.* at 453 (relying on *Bd. of Supervisors v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008)). Nevertheless, "[n]o single factor is dispositive, and a finding of a

6

likelihood of confusion need not be supported by a majority of the factors." *Id.* (quoting *Smack Apparel*, 550 F.3d at 478).

All-State contends that the First Amended Complaint lacks specific allegations regarding the *Streamline* factors, "including critical factors such as mark strength, purchaser sophistication, and action confusion beyond isolated anecdotal incidents," and fails to state a plausible claim under the Lanham Act. (Doc. No. 23 at 6). As the Fifth Circuit has recognized, however, "[n]o single factor is dispositive," *id.*, and there is certainly no requirement to provide specific factual allegations for each and every one of the *Streamline* factors at the pleading stage. *See Chanel Inc. v. Christian Salvatore NY Corp.*, No. 3:22-CV-2218, 2023 WL 8242743, at *8–9 (N.D. Tex. Nov. 3, 2023), *adopted by*, 2023 WL 8244044 (N.D. Tex. Nov. 28, 2023) (recognizing that there is no requirement to plead factual allegations to support each of the *Streamline* factors).

The Court finds that the factual allegations in the First Amended Complaint sufficiently set out that All-Star's use of MES's trademark on the appearance and design of the inflatable booths creates the likelihood of confusion as to source, affiliation, or sponsorship. MES alleges that All-Star intentionally copied the design and appearance of the inflatable mobile booths. *See* (Doc. No. 19 at 18). Not only did MES provide alleged side-by-side photographs of the booths, *see* (*id.*), but MES also alleges that All-Star was intentionally using photos on its website, social media accounts, emails, and physical marketing material of MES booths to pass as their own products in the exact same marketplace with the same potential clients. *See, e.g.*, (*id.* at 13). MES further alleges that multiple customers expressed actual confusion between the All-Star booths and the MES booths. *See* (*id.* at 11). The Court finds that these factual allegations, without engaging in a line-item analysis of the *Streamline* factors, state a plausible claim that All-Star's use of the trademark creates a likelihood of confusion. The Motion to Dismiss is denied as to Count III.

7

**B.  Federal Trade Dress Infringement and Common Law Trade Dress Infringement**

MES alleges that All-Star's "advertisements, promotions, offers to sell, sales, and/or distribution of infringing products . . . constitute infringement of [MES]'s trade dress" under the Lanham Act and common law trade dress infringement. "To establish trade-dress infringement under § 43(a) of the Lanham Act for an unregistered mark, a plaintiff must first demonstrate that its trade dress is either inherently distinctive or that it has acquired distinctiveness through secondary meaning." *Worth Beauty LLC v. Allstar Products Group, LLC*, No. 4:17-CV-1682, 2017 WL 5300007, at *2 (S.D. Tex. Nov. 13, 2017). Nevertheless, "trade dress protection may not be claimed for product features that are functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001). "A product feature is functional and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of an article." *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002) (quoting *TrafFix*, 532 U.S. at 32)). All-Star contends that the First Amended Complaint does not include sufficient factual allegations to establish that the alleged trade dress is "non-functional."

The First Amended Complaint repeatedly alleges that the alleged trade dress of the inflatable booths "includes famous and/or well-known, unique, distinctive, and non-functional ***color schemes and patterns*.**" *See, e.g.*, (Doc. No. 19 at 32). MES alleges that "[t]he individual features and elements of [the] inflatable paint booths and the look, appearance, and image of the product, ***including the white and gray color scheme***, identify the inflatable paint booth as [MES] products." (*Id.* at 15–16). While All-Star contends that the alleged features of the trade dress must be "functional" because the MES designed the paint booths to comply with various federal and state regulations, (*id.* at 6), MES has clearly pleaded that the alleged trade dress relates to the non-functional elements of the paint booth such as unique and distinctive ***color schemes and***

8

*patterns*—not the actual design of the paint booths that may implicate those workplace regulations. (*Id.* at 32). While there may later be evidence in the case that supports All-Star's proposition, "these are exactly the types of factual arguments that are not properly resolved on a motion to dismiss" because "at this incipient stage of the litigation, there is no basis for the Court to definitively conclude, as a matter of law, those trade dress features are indisputable functional." *Worth Beauty*, 2017 WL 5300007, at *5.

Accordingly, the Court finds that the First Amended Complaint provides fair notice of the trade dress elements at issue in this lawsuit and adequately allege that those elements are "non-functional." The Motion to Dismiss is denied as to Counts V and VI.

## C. Trade Dress Dilution

MES alleges that All-Star's "advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with [MES] constitute" trade dress dilution under Texas Business & Commerce Code § 16.03. Under § 16.03(a), "the owner of a mark that is famous and distinctive, inherently or through acquired distinctiveness, in this state is entitled to enjoin another person's commercial use of a mark or trade name that begins after the mark has become famous if use of the mark or trade name is likely to cause the dilution of the famous mark." *Id.* Under Texas law, "a mark is considered to be famous if the mark is widely recognized by the public throughout this state or in a geographic area in this state as a designation of source of the goods or services of the mark's owner." *Id.* § 16.03(b). To determine whether a mark qualifies, courts consider factors such as "the duration, extent and geographic reach of the advertisement and publicity of the mark in this state," "the amount, volume, and geographic extent of sales of goods or services offered under the mark in this state," "the extent of actual recognition of the mark in this state," and "whether the mark is registered in this state." *Id.* § 16.03(b)(1)–(4).

9

All-Star contends that the MES has failed to sufficiently allege that the trade dress is "famous" under the Texas Business and Commerce Code. The Court disagrees. The First Amended Complaint extensively alleges that MES "has been selling its inflatable paint booths with its distinctive trade dress in Texas and in interstate commerce since 2013," expending "significant resources advertising and marketing its inflatable booth products under the MES brand through its website, various tradeshows, televisions shows, social media platforms, and print media." (Doc. No. 19 at 17). MES alleges that these "extensive advertising and marketing efforts and Texas and the United States have included developing a custom website featuring [MES]'s inflatable enclosures or booths; posting on MES social media accounts including Facebook, Instagram, YouTube, X, and LinkedIn; advertising in a variety of med[i]a including print, television, internet, and race car sponsorships; working with various television shows to promote the MES inflatable booths and enclosures; and participating in racecar sponsorships." (*Id.*). Even more specifically, MES alleges that it "has exhibited and demonstrated its inflatable booths and enclosures at numerous trade shows throughout Texas and the United States, including SEMA, Mobile Tech Expo (MTE), International Buildiners Show, PB Expo, NHRA, PDRA, and PRI" and that it has features its products on numerous television shows including "TruckU, 2 Guys Garage, Motorhead Garage, Performance TV, Wheels TV, Diesel Brothers, Garage Squad, Graveyard Cars, Girl Gang Garage, Carcuss, Detroit Muscle, Ellen's Design Challenge, The Great Give Back, Bad Chad, Counts Kustoms, DupliColor TV, Goozquad, Hoonigan, and Rad Rides by Troy." (*Id.* at 17–18). These allegations support MES's contention that its "trade dress has become of famous and well-known indicator of the origin and quality of [its] mobile inflatable paint booths." (*Id.* at 35).

The Court finds that these factual allegations state a plausible claim that the alleged trade dress is "famous" under the Texas Business and Commerce Code, or "is widely recognized by the

10

public throughout this state or in a geographic area in this state as a designation of source of the goods or services of the mark's owner" due to considerations such as the "duration, extent and geographic reach of the advertisement" and "the amount, volume, and geographic extent of sales of goods or services." *See* TEX. BUS. & COM. CODE § 16.03(b). Accordingly, the Court denies the Motion to Dismiss as to Count VII.

### IV.    Conclusion

For the foregoing reasons, All-Star's Rule 12(b)(6) Motion to Dismiss (Doc. No. 23) is **DENIED.**

It is so ordered.

Signed on this the ___24th___ day of July 2026.

_____

Andrew S. Hanen
United States District Judge

11