United States District Court
Southern District of Texas
**ENTERED**
October 20, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MOBILE ENVIRONMENTAL SOLUTIONS, LLC, | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-04929 |
| ALL-STAR INFLATABLES, INC. et al., | § | |
| *Defendant.* | § | |

## ORDER

Pending before the Court is Plaintiff Mobile Environmental Solutions, LLC's ("Plaintiff" or "MES") Motion for Leave to File Second Amended Complaint and Add New Parties. (Doc. No. 33). Defendant All-Star Inflatables ("All-Star") responded in partial opposition. (Doc. No. 34). Plaintiff replied. (Doc. No. 38). Defendants have alternatively filed its Motion for Leave to File Answer Out of Time. (Doc. No. 37). Plaintiff responded in opposition, (Doc. No. 39), and Defendant replied. (Doc. No. 40). After reviewing the briefs and applicable law, the Court hereby GRANTS Plaintiff's Motion. (Doc. No. 33). Defendant's Motion is therefore dismissed as moot. (Doc. No. 37).

## BACKGROUND

Tom Williams formed MES in 2013 to design and provide mobile inflatable paint booths to capture overspray for various on-site vendor services. (Doc. No. 19, ¶ 8). Williams developed and marketed this product to the general market, attending trade shows in Texas. (*Id.* at ¶ 11). Also in 2013, Williams met Paul Oliver, owner of All-Star. (*Id.*). At the time, All-Star manufactured

and sold inflatable arches for athletic and sporting events. (*Id.*). It had never manufactured paint booth products like the ones sold by MES. On May 7, 2013, MES and All-Star entered into a written purchasing agreement whereby All-Star would manufacture inflatable booths for MES's use in the automotive field solely for MES, and MES would purchase inflatable booths for use in the automotive field solely from All-Star. (*Id.* at ¶ 12). As part of this agreement, All-Star would use MES's confidential information and intellectual property to manufacture their products solely for MES. In doing so, MES granted All-Star a "non-exclusive, non-royalty bearing license" to use this information and property. (*Id.* at ¶ 13). MES alleges that it only granted All-Star the right to make these booths for the purposes underlying the agreement. (*Id.*).

On August 20, 2022, the parties expanded this agreement beyond the automotive field to allow All-Star to manufacture inflatable booths for use in the automotive, aerospace, construction, photography, or medical fields solely for MES. MES alleges that part of this amended agreement allowed MES to utilize other manufacturers, not only All-Star, or afforded them the option of taking manufacturing in-house as the demand was greater than All-Star could produce. (*Id.* at ¶ 21). Plaintiff began having issues with All-Star's performance under the agreement and terminated their contractual relationship in late 2022. (*Id.* at ¶ 22).

In 2023, MES discovered that All-Star was allegedly using MES's confidential and proprietary information in holding itself out as the inventor and purveyor of the inflatable booths that MES created. (*Id.* at (*Id.* at ¶ 24). Oliver had formed "Best American Booths" and "Revilo Industries, Inc." which manufactured, marketed, distributed, and sold mobile inflatable booths. (*Id.*). In doing so, Oliver advertised that Best American Booths and Revilo Industries were "leading provider[s]" of such products and providers of "[c]utting-[e]dge technology." (*Id.*). In marketing these companies, Oliver used photos of products that MES alleges belong to it. MES filed this suit

against All-Star and Revilo Industries, Inc., in December 2024, alleging various causes of action including breach of contract, trade dress infringement, and misappropriation of trade secrets, among others.

In August 2026, MES discovered that All-Star was marketing itself online and through social media as The Inflatable Source, Inc. (Doc. No. 33, Ex. A, ¶ 38). Upon further investigation, MES discovered that Paul and Kristie Oliver were no longer doing business out of All-Star, but had in fact formed a new Texas corporation formerly known as All-Star Inflatable on April 6, 2026. (*Id.* at ¶ 41). State records showed at that time that All-Star was still a functioning corporation and that All-Star and Inflatable Source shared a registered office. (*Id.*). Plaintiff now alleges that the Olivers were siphoning assets and business from All-Star to Inflatable Source and defrauding creditors of All-Star—including MES—in doing so. Kristie Oliver testified that she is the Chief Executive Officer of All-Star, and Paul Oliver is the President. (*Id.* at ¶ 44). She further testified that Best American Paint Booths is an operating division of All-Star, not a separate entity. (*Id.*). The Olivers also have a number of businesses under All-Star that share offices, production facilities, overhead, and employees. (*Id.* at ¶ 45). These businesses also prepare consolidated financial statements. (*Id.*).

## PROCEDURAL HISTORY

Plaintiff filed suit on December 16, 2024. Defendant All-Star did not file an answer and still has yet to file an answer. Plaintiff filed its First Amended Complaint on May 16, 2025. All-Star moved to dismiss without filing a responsive pleading. (Doc. No. 23). That motion was dismissed on July 24, 2026. (Doc. No. 31). The First Amended Scheduling Order agreed that the parties would complete discovery on May 22, 2026. (Doc. No. 30). Plaintiff filed this motion for leave to file a Second Amended Complaint on August 26, 2026. (Doc. No. 33). On or around

September 16, 2026, Defendant both responded to Plaintiff's motion and filed a motion for leave to file an answer out of time in response to Plaintiffs First Amended Complaint. (Doc. No. 37). Plaintiff filed a joint pretrial order pursuant to the First Amended Scheduling Order on October 10, 2026. (Doc. No. 47). The case is set for trial on November 23, 2026.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that amendments to a complaint may be made once as a matter of course within 21 days of serving it, and after that, only by leave of court or with the consent of the opposing party. *See* Fed. R. Civ. P. 15(a). Under Rule 15(a), the "court should freely give leave when justice so requires." *Id.* Unless there is a "substantial reason," such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party," the court should grant leave to amend. *Dussoy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Leave to amend, however, is "in no way automatic." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). The Fifth Circuit has consistently affirmed denials of motions to amend where the amendment would be futile. *Turner v. Pan. Am. Life Ins. Co.*, 478 F. App'x 915, 916 (5th Cir. 2012). Furthermore, "if a complaint as amended could not withstand a motion to dismiss, then the amendment should be denied as futile." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003).

If an amendment requires that a scheduling order be modified, the moving party must show good cause and seek judicial consent. Fed. R. Civ. P. 16(b)(4). The Court considers four factors when determining if good cause exists: "(1) the explanation for the failure to timely move to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Marathon Fin. Ins., Inc., RRG v.*

*Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (quoting *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003)) (internal quotes omitted)).

## II. ANALYSIS

Defendant does not oppose Plaintiff's motion to amend its complaint to add The Inflatable Source, Inc. as a defendant and add two causes of action. Plaintiff did not know about the incorporation of The Inflatable Source, Inc., as the Olivers only formed the corporation and started doing business in April 2026. Plaintiff asserts that it discovered the existence of this new company almost simultaneous to the August 21, 2026, deadline to add new parties.[1] (Doc. No. 33, p. 5). The Court finds there to be good cause to amend the scheduling order and allow Plaintiff leave to add The Inflatable Source, Inc. as a party. Plaintiff MES has provided a sufficient explanation as to the delay in its discovery of Inflatable Source. Further, Inflatable Source appears to be operating as All-Star for all purposes relevant to this suit. The Court therefore **GRANTS** Plaintiff's motion to add The Inflatable Source, Inc.

### 1. Motion to add Olivers as defendants

Plaintiff also moves to add Paul and Kristie Oliver as defendants and to add Counts XIV, Constructive and Express Fraudulent Transfer (TUFTA), and XV, joint and several liability for the actions of All-Star.

In support of their TUFTA claim against the Olivers, Plaintiffs allege that the Olivers are directors, officers, and owners of both All-Star and Inflatable Source. (Doc. No. 33-1, ¶ 154(a)). It further alleges that All-Star, through the Olivers, transferred substantially all of All-Star's assets to Inflatable Source without reasonable compensation, and thereafter All-Star became insolvent.

[1] The initial scheduling order listed August 21, 2026 as the deadline for joining new parties. (Doc. No. 21). This scheduling order was amended. As amended, the order does not include a deadline for joining new parties. (Doc. No. 30). The Court notes the more pertinent timeline issue is the upcoming trial setting, not this deadline.

(*Id.* at ¶ 154(d)-(g)). Plaintiff asserts that this Court should pierce the corporate veil and find that All-Star was acting as an alter ego for the Olivers and for Inflatable Source pursuant to TEX. BUS. ORG. CODE § 21.223(b) for causing All-Star to perpetrate fraud on Plaintiffs.

Plaintiff also contends that it did not know of Inflatable Source or the Olivers involvement in it until shortly before the August 21 deadline. All-Star, on the other hand, argues that Plaintiff could have, through a proper exercise of due diligence, found this information out as they had already conducted extensive discovery with the Olivers as owners of All-Star. Plaintiff's first amended complaint, (Doc. No. 19), does not allege a cause of action under TUFTA nor does it attempt to pierce the corporate veil. Plaintiff's claim that All-Star and the Olivers were perpetrating actual fraud did not arise until it discovered the transfer of assets to Inflatable Source in August of 2026. Therefore, to the same extent that this Court accepts Plaintiff's explanation for its failure to file this motion before the August 21 deadline with regard to Inflatable Source, it accepts the same explanation with regard to the Olivers. Plaintiff further argues that it is particularly important that the Olivers are added as defendants to allow Plaintiffs to obtain complete relief and to prevent the Olivers from doing again what they did with Inflatable Source—creating a new company and shifting all relevant assets to escape liability.

Defendant asserts that granting Plaintiff's motion to add the Olivers would cause prejudice as the trial is scheduled for November 2026. Defendant, however, does not oppose a brief continuance for the purpose of adding Inflatable Source. Plaintiff asserts that due to the Olivers' involvement in this litigation as owners of All-Star and Revilo, little additional discovery will be required to assess their individual liability. Paul and Kristie Oliver have already been deposed in their official capacity as president and CEO of All-Star. Therefore, Plaintiff asserts that additional discovery would be minimal and limited to the Olivers' involvement in their personal capacity.

On the other hand, if this Court denies Plaintiff's motion to add the Olivers, Plaintiff would be forced to file a parallel lawsuit against the Olivers.

Weighing the factors, the Court finds that good cause exists to allow Plaintiff to file a Second Amended Complaint.

## CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's motion to file a Second Amended Complaint. (Doc. No. 33). The Clerk of the Court is ordered to file the Second Amended Complaint (docketed as Doc. No. 33-1) as the live complaint in this case. Defendant may respond to this new complaint according to Fed. R. Civ. P. 15(a)(3). Defendant's Motion to File Answer Out of Time is therefore dismissed as moot. (Doc. No. 37). The current scheduling order is vacated, and the Court orders the parties to file a Proposed Joint Scheduling Order within 30 days after the additional parties are served.

Signed on this 20th day of October 2026.

Andrew S. Hanen
United States District Judge